**Dr. Ivo JANECKA and Cheryl Janecka, Plaintiffs,**

v.

**Robert S. FRANKLIN, Esq.; Samuel G. Fredman, Esq., & Neil A. Fredman, Esq., individually and as officers, employees and/or agents of Fink, Weinberger, Fredman, Berman & Lowell, P.C.; and Fink, Weinberger, Fredman, Berman & Lowell, P.C., a Professional Corporation, organized under the Laws of the State of New York, Defendants.**

No. 87 Civ. 6317 (LBS).

United States District Court, S.D. New York.

Oct. 19, 1987.

As Amended Oct. 21, 1987.

David A. Goldstein, New York City, for plaintiffs.

Fink, Weinberger, Fredman, Berman & Lowell, P.C., New York City (Robert S. Groban, Jr., of counsel), for defendants.

Laufer & Farkash, New York City (Lawrence Farkash, of counsel), for defendant Robert S. Franklin.

## OPINION

SAND, District Judge.

This is an action brought by Cheryl Janecka, the ex-wife of defendant Robert S. Franklin, Esq., and her present husband against Franklin and the attorneys who represented him in a New York state court custody proceeding. Plaintiffs purport to base federal jurisdiction on alleged violations of the federal wiretap law (18 U.S.C. § 2511) and the Fourth Amendment. Defendants move to dismiss and seek Rule 11 sanctions.

Pursuant to a separation agreement dated February 8, 1984, defendant Franklin and Cheryl Janecka agreed to joint custody of their two minor children. This agreement, which survived the divorce, required that Janecka, who had primary custody, maintain a local residence.

In April 1985, Cheryl Janecka married Ivo Janecka and informed Franklin of her intent to move to Pittsburgh with her new husband and children. Franklin retained the firm of Fink, Weinberger, Fredman, Berman & Lowell ("Fink/Weinberger") to enforce the terms of the separation agreement by giving Franklin physical custody of the children. Litigation in state court ensued.

On or about August 7, 1986, Franklin obtained a temporary restraining order against the removal of the children to Pittsburgh. Janecka left the children with Franklin and moved to Pittsburgh.

In the state court proceedings, Franklin testified that on September 8, 1986 he installed a telephone recording device on his home telephone where his children then resided (Complaint, Ex. 3) in order to preserve the telephone calls made by Cheryl Janecka to her children. He did this, he claimed, when he became aware that his five year old daughter was crying during a

telephone conversation with her mother. Franklin picked up a telephone extension and heard his ex-wife discussing aspects of the custody dispute. (Ex. 3, p. 21.) He installed the recording device for use by a consulting psychologist assisting him in the custody dispute. The making of these tapes is the basis of the wiretap claims against Franklin.

The Fink/Weinberger defendants are alleged to have conspired with Franklin to violate the wiretap statute and to have unlawfully utilized the tapes by introducing them at the state custody proceedings for purposes of impeaching Cheryl Janecka's credibility. A claim of unlawful search and seizure, violative of the Fourth Amendment, is also asserted based on the electronic recordings and the use of a photocopy of a letter Franklin is alleged to have "stolen" from his home.

No other bases for federal jurisdiction are asserted.

### Discussion

■ Defendants move to dismiss asserting that this case is fully controlled by *Anonymous v. Anonymous*, 558 F.2d 677 (CA2, 1977). There, during the two years preceding their divorce, the husband had intercepted and taped his wife's telephone conversations with their daughter. In determining that the federal wiretap statute was not violated, the Court noted:

"Appellee's activity would clearly not be prohibited if it consisted merely of listening into his wife's and daughter's telephone conversations from an extension phone in his apartment. Congress explicitly exempted such activity from coverage by the Act." 558 F.2d at 678.

The Court further wrote:

"The facts in the instant case, by contrast, present a purely domestic conflict—a dispute between a wife and her ex-husband over the custody of their children—a matter clearly to be handled by the state courts." 558 F.2d at 679.

Finding the statute inapplicable to the conduct in question, the court found it unnecessary to reach the question, also urged by the defendants here, that there was consent by the children to the interception. We similarly find it unnecessary to reach this question.[1]

Plaintiffs first seek to distinguish *Anonymous* on the grounds that the interception there in question took place during the marriage, while here the divorce preceded the interception although the separation agreement survived the divorce. We find this distinction not relevant to the reasoning of *Anonymous*. Contrary to plaintiffs' claim, *Anonymous* did not turn on any notions of inter-spousal immunity. Indeed, the Court noted that:

"... nor do we suggest that a plaintiff could never recover damages from his or her spouse under the federal wiretap statute." 558 F.2d at 679.

Rather, *Anonymous* turned on the nature of the interception, *i.e.*, of conversations on one's own telephone installed in one's own home, and the nature of the underlying controversy.

In emphasizing that custody disputes were matters clearly to be handled by the state courts (558 F.2d at 679), the Court in *Anonymous* was, in essence, stating its conclusion that Congress did not intend that the federal wiretap statute furnish a vehicle for the importation into federal court of matters so peculiarly within the exclusive province of state tribunals. Nothing more clearly belongs in state, not federal, court than a contested custody proceeding. *See also Simpson v. Simpson*, 490 F.2d 803, 805 (CA5), *cert. denied*, 419 U.S. 897, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974).

■ Plaintiffs also urge that the statute was violated because all conversations, not merely those of the ex-wife were recorded. But the plaintiffs may assert only the rights of the ex-wife and her present husband (whose conversations are not alleged to have been recorded). She is not the spokesperson for others whose conversa-

---

**1.** Nor do we find it necessary to address plaintiffs' claims as to the preclusive effect of the state court's observations with respect to the utilization of the recordings.

tions were also intercepted. No use was made by the defendants of unrelated conversations incidentally recorded.

Finally, and most emphatically, plaintiffs urge that *Anonymous* was wrongly decided. Indeed, plaintiffs furnish an affidavit of Professor G. Robert Blakey of Notre Dame Law School, said to be an expert on congressional intent with regard to this statute, and its principal draftsman, which states, "*Anonymous v. Anonymous*, 558 F.2d 677 (2d Cir.1977) was wrongly decided." Exhibit to Opposition Affidavit, dated October 2, 1987. We are somewhat at a loss to understand the function of such an affidavit insofar as the motion to dismiss is concerned. In any event, we are of course, bound by the holdings of the Second Circuit.

 The Fourth Amendment claim is entirely without merit, no governmental action being alleged or present.

Since no federal claims survive this motion, we dismiss the complaint in its entirety. No basis exists for the continuation in this Court of the pendent state claims, especially in light of the overwhelmingly predominant state interest in adjudication of custody claims. *Cf. Phillips, Nizer, et al., v. Rosensteil*, 490 F.2d 509, 516 (CA2, 1973).

### Rule 11

 Defendants' Rule 11 claims present by far the most difficult aspect of these motions. Insofar as the Fourth Amendment claims are concerned, the plaintiffs' claim appears totally without merit. We also find particularly distressing the plaintiffs' suit as against the attorneys who represented the ex-husband in the state custody proceedings, which appears largely to be based on their use of the recordings to impeach plaintiff Cheryl Janecka's credibility.[2]

Yet, a colorable basis for distinguishing *Anonymous, i.e.,* the fact that the interception took place after the divorce, was present. And plaintiffs may have sincerely

believed that the Court would seek to limit the scope of *Anonymous*. Although we regard the question as an exceedingly close one, we deny the Rule 11 motions because, despite the factual context of this particular controversy, we are concerned that a contrary ruling might chill meritorious challenges seeking to limit prior arguably distinguishable precedents.

Defendants' motions to dismiss are granted and in light of this determination, all other motions are moot.

Rule 11 sanctions are denied.

SO ORDERED.

---

2. This distress is somewhat mitigated by the fact that counsel appeared fully aware "that we run a risk" under the state penal law in presenting the evidence. Complaint, Ex. 2, p. 167.