OPINION OF THE COURT
Anthony J. Falanga, J.
Defendant Shlomo Talmor moves to dismiss the complaint herein pursuant to CPLR-3211 (a) (7) on the ground that it fails to state a cause of action as to each of four separate causes of action therein alleged.
This action seeks money damages and alleges that the defendant secretly placed a voice activated recording device on the telephone in the parties’ marital home, where both resided, in order to record telephone conversations of the plaintiff, his wife, and thereby obtain information which he could use to his benefit in the parties’ divorce action, which is pending in this Part under a separate index number (No. 99-015415).
As noted, plaintiff alleges four separate causes of action, to wit: (a) under the provisions of the Communications Act of 1934 (47 USC § 605); (b) a private (nongovernmental) cause of action under the New York State Penal Law concerning wiretapping (Penal Law § 250.00 et seq.); (c) a private (nongovern *295 mental) cause of action under the Federal Wiretap Act, created by the Omnibus Crime Control and Safe Streets Act of 1968 (18 USC § 2510 et seq.); and (d) intentional infliction of emotional distress under New York State law. All four causes of action require dismissal, for the reasons hereinafter set forth.
The Communications Act of 1934 (47 USC § 605 [a]), which made it unlawful to intercept and disseminate wire and radio communications, was amended by the Omnibus Crime Control and Safe Streets Act of 1968 (Pub L 90-351, 82 US Stat 197), by removing the word “wire” from all but the first sentence of that section. That first sentence reads, in relevant part, that: “no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpeona issued by a court of competent jurisdiction, or (6) on demand of other lawful authority.” (47 USC § 605 [a].) Such sentence has been held to refer to communications personnel, not private persons engaged in wiretapping activity (see, International Cablevision v Noel, 859 F Supp 69 [WD NY 1994], vacated on other grounds 75 F3d 123, 131, n 4 [2d Cir 1996]; National Basketball Assn. v Sports Team Analysis & Tracking Sys., 939 F Supp 1071 [SD NY 1996]; United States v Norris, 88 F3d 462 [7th Cir 1996]). This interpretation is consistent with the nature of the six categories of disclosure listed in the first sentence of the statute.
It has been held, further, that the intent of Congress when the 1968 legislation was enacted was to transfer regulation of wiretapping from the Communications Act of 1934 to the Omnibus Crime Control and Safe Streets Act of 1968 (18 USC § 2510 et seq.) which specifically regulates wiretapping (see, United States v Norris, supra; Matter of Korman v United States, 486 F2d 926 [7th Cir 1973]; International Cablevision v Sykes, 75 F3d 123 [2d Cir 1996]). The rest of section 605 refers to radio communications only and is, therefore, inapplicable. The Communications Act of 1934 having no application to the *296 defendant herein, the first cause of action must be, and hereby is, dismissed.
The second cause of action seeks to have this court establish new law and find a private cause of action under New York State Penal Law § 250.00 et seq. on the ground that there exists, or should exist, a common-law right to privacy in New York. This court declines to do so, for two reasons. Firstly, while there does not appear to be a case in point coming out of the Second Department, the Appellate Divisions in both the First and Fourth Departments have already considered this issue and have declined to find that such a right may be inferred from article 250 of the Penal Law, after applying the appropriate test for the finding of a private right of action under a penal statute as determined by the Court of Appeals in Burns Jackson Miller Summit & Spitzer v Lindner (59 NY2d 314; see also, Greenfield v Schultz, 251 AD2d 67; Fern v International Bus. Machs., 204 AD2d 907). Secondly, any question as to whether the Court of Appeals is inclined to overrule its “old” decision in Roberson v Rochester Folding Box Co. (171 NY 538), holding that no common-law right to privacy exists in New York, was plainly dispelled as recently as 1993 by its decision in Howell v New York Post Co. (81 NY2d 115, 123-124) wherein the Court observed: “While the courts of other jurisdictions have adopted some or all of these torts, in this State the right to privacy is governed exclusively by sections 50 and 51 of the Civil Rights Law; we have no common law of privacy (Stephano, 64 NY2d, at 182; Arrington, 55 NY2d, at 439-440; Cohen v Hallmark Cards, 45 NY2d 493, 497, n 2; Flores v Mosler Safe Co., 7 NY2d 276, 280). Balancing the competing policy concerns underlying tort recovery for invasion of privacy is best left to the Legislature, which in fact has rejected proposed bills to expand New York law to cover all four categories of privacy protection (see, Arrington, 55 NY2d, at 440).” There being no common-law right to privacy in New York and no private right of action under the Penal Law, the second cause of action must likewise be, and hereby is, dismissed.
The third cause of action seeks damages pursuant to 18 USC § 2520 based upon defendant’s violation of 18 USC § 2511. The Federal courts interpreting 18 USC § 2520, however, have held that Congress did not intend that the Federal wiretapping laws should apply to situations where a party to a matrimonial action engages in wiretapping of the telephone in his or her own home in preparation for litigation (see, Anonymous v Anonymous, 558 F2d 677 [2d Cir 1977]; Janecka v Franklin, 684 F *297 Supp 24 [SD NY 1987], affd 843 F2d 110 [2d Cir 1988]). This has been so held even where the offended spouse resided in the same home (see, Lizza v Lizza, 631 F Supp 529 [ED NY 1986]; London v London, 420 F Supp 944 [SD NY 1976]; Simpson v Simpson, 490 F2d 803 [5th Cir 1974]).
While various Circuits around the country are split on the question of interspousal immunity as a rationale for this result, the cases in this Circuit have distinguished between those cases where a defendant has wiretapped the telephone in his own home (which is the case here) and those cases where the defendant has invaded the home of another to accomplish the act of wiretapping. The act has been found applicable to the latter situation, but not to the first. Inasmuch as our Second Circuit has held that the private right of recovery under 18 USC § 2520 is not available against a person who taps his/her own home telephone in preparation for a matrimonial litigation, said third cause of action must also be, and hereby is, dismissed.
The fourth cause of action alleged in the complaint herein seeks recovery for the said conduct, the wiretapping, on a theory that in so doing, defendant intentionally inflicted severe emotional distress upon the plaintiff. On a motion to dismiss, the allegations of the complaint are deemed to be true and the complaint is to be liberally construed in favor of plaintiff (see, Amfesco Indus. v Greenblatt, 172 AD2d 261); however, bare legal conclusions are not sufficient nor entitled to such consideration (see, Mark Hampton, Inc. v Bergreen, 173 AD2d 220). Aside from the defendant’s argument that the plaintiff’s distress/injury is alleged in conclusory terms only and has not, therefore, been adequately pleaded, the court finds that there are two additional and more serious reasons why this cause of action must also be dismissed.
First of all, there are strong public policy considerations which militate against allowing the maintenance of a tort action between a husband and wife embroiled in a matrimonial action (see, Vasquez v Vasquez, 175 Misc 2d 847; Hickok v Hickok, 150 Misc 2d 123). The Court of Appeals has articulated in Weicker v Weicker (22 NY2d 8, 11) that: “Assuming that New York law now permits ‘recovery for the intentional infliction of mental distress without proof of the breach of any duty other than the duty to refrain from inflicting it’ * * * strong policy considerations militate against judicially applying these recent developments in this area of the law to the factual context of a dispute arising out of matrimonial differences. To *298 sustain the claim for damages would result in a revival of evils not unlike those which prompted the Legislature in 1935 to outlaw actions for alienation of affections and criminal conversation (L. 1935, ch. 263; Civil Rights Law, § 80-a, formerly Civ. Prac. Act, § 61-b).” (See also, Baron v Jeffer, 98 AD2d 810.)
The court also finds that the allegations of the complaint, accepted as true, are not sufficient to make out a cause of action for intentional infliction of emotional distress. In order to establish such a claim, plaintiff must prove four elements, to wit:
(1) that defendant engaged in extreme and outrageous conduct;
(2) that defendant did so intentionally; (3) that defendant’s conduct caused the distress; and (4) that plaintiff suffered severe emotional,distress (see, Christenson v Gutman, 249 AD2d 805). The conduct in question must “be regarded as atrocious and utterly intolerable in a civilized society” (Klinge v Ithaca Coll., 235 AD2d 724, 727). The conduct must be “so severe that no reasonable man could be expected to endure it” (Restatement [Second] of Torts § 46, comment j; also, Richard L. v Armon, 144 AD2d 1). Whether the alleged conduct is sufficiently outrageous to satisfy this element is, in the first instance, a decision for the court (see, Rocco v Town of Smith-town, 229 AD2d 1034).
The court has reviewed PJI3d 3:6 (2000 Supp) and the numerous cases therein cited concerning the types of conduct which have and/or have not been found to have met this standard. A review of such cases is instructive as to the kind of conduct required to support a claim for intentional infliction of emotional distress under New York law. For example, the following have been held not sufficiently outrageous to sustain such a cause of action: (a) defendant doctor obtained hospital documents showing that plaintiff underwent a vasectomy and then used the documents in a matrimonial action to support his contention that his wife was having an affair with the plaintiff (Andrews v Bruk, 220 AD2d 376); (b) an attorney’s fraudulent concealment of a loan that the attorney and client obtained by means of a forged power of attorney used to place a mortgage on plaintiffs property (Vasilopoulos v Romano, 228 AD2d 669); (c) falsely accusing someone of being antisemitic and biased in her treatment of Jews (Herlihy v Metropolitan Museum of Art, 214 AD2d 250); (d) destroying a student’s exam motivated by personal animus toward the student (Silverman v New York Univ. School of Law, 193 AD2d 411); (e) a statement by counsel to an adverse party at trial that the latter *299 would suffer heavily because of his lawyer’s failure to settle (Nestlerode v Federal Ins. Co., 66 AD2d 504); (f) communicating to plaintiffs that they would be prevented from selling their apartment at a profit and that their life in the building would be made miserable (Smukler v 12 Lofts Realty, 156 AD2d 161); (g) intentionally relaying false information to a hospital that the plaintiff, a nurse, had euthanized a patient (LaDuke v Lyons, 250 AD2d 969); (h) permitting crude and offensive statements of a sexually derisive nature to occur in the workplace (Shea v Cornell Univ., 192 AD2d 857); and (i) directing religious and ethnic slurs, including “Hebe” and “Kike” against an employee, held to be deplorable and reprehensible, but still not stating a cause of action for intentional infliction of mental distress (Leibowitz v Bank Leumi Trust Co., 152 AD2d 169).
By way of contrast, the following activities have been held to be sufficiently outrageous to support a claim of intentional infliction of emotional distress or, at least, raise a question of fact for a jury on such issue: (a) defendant yelled and gestured obscenely at plaintiff, followed her home, refused to leave the premises, followed her children and family members around and told plaintiff he knew where the children went to school and when they get out of school (Bunker v Testa, 234 AD2d 1004); (b) defendant, a psychiatrist, persuaded his patient to have a sexual relationship with him for therapeutic benefit and he made numerous harassing telephone calls to her after she terminated the relationship (Sanchez v Orozco, 178 AD2d 391); (c) threatening bodily harm to seller and purchaser if a house were sold to a “colored” purchaser (Ruiz v Bertolotti, 37 Misc 2d 1067, affd 20 AD2d 628); (d) destroying windows of a house where a woman and children were staying, thereby exposing them to severe cold, and threatening her life by displaying a bullet (Weisman v Weisman, 108 AD2d 853); (e) making false charges in a proceeding against a high school principal and spreading false rumors that the principal had also been involved in an affair, had used student funds for his own benefit, and utilized associates to work on his house during school hours, all in order to coerce his resignation (Sullivan v Board of Educ., 131 AD2d 836); (f) making hundreds of hang-up telephone calls (Doe v Esposito, 114 AD2d 992); and (g) an intentional misdiagnosis of HIV (Harvey v Cramer, 235 AD2d 315).
Comparing the allegations in the case at bar (that defendant tapped his own home telephone to intercept his wife’s calls, for his use or advantage in their matrimonial litigation) with the *300 above lines of cases, this court concludes that the allegations in the fourth cause of action are insufficient, as a matter of law, to sustain a cause of action for intentional infliction of emotional distress and, accordingly, the said fourth cause of action must be, and hereby is, dismissed.
This matter having been disposed of, the parties are reminded that their divorce action (under index No. 99-015415) is currently scheduled for trial before this court on September 18, 2000 at 9:30 a.m. and, in view of the dismissal herein, the parties should be ready to proceed to trial on that date.